IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

**TIMOTHY BOWERS,** *et al.***,**

    **Plaintiffs,**

v.

**VOLKSWAGEN GROUP OF
AMERICA, INC., f/k/a VOLKSWAGEN
OF AMERICA, INC.,** *et al.***,**

    **Defendants.**

Case No.: 1:19-cv-1043
Fairfax Cir. Ct. Case CL19-09075

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendants Volkswagen Group of America, Inc. ("VW America") and Audi of America, LLC ("Audi America") (collectively "Defendants") hereby remove the action captioned *Bowers, et al. v. Volkswagen Group of America, Inc., et al.*, Case No.: CL19-09075, from the Circuit Court for the County of Fairfax, Virginia to the United States District Court for the Eastern District of Virginia, Alexandria Division. Pursuant to the requirements of 28 U.S.C. § 1446(a), the entirety of the state civil action file is attached hereto as **Exhibit 1**. As grounds for removal, Defendants state as follows:

### BACKGROUND

1. On or about July 2, 2019, Timothy Bowers, Jeffrey Stein, and David Van Gemert (collectively "Plaintiffs"), residents of Tennessee, New York, and Wisconsin, respectively, commenced this action against VW America, Volkswagen Aktiengensellschaft ("VW Germany"), Audi Aktiengesellschaft ("Audi Germany"), and Audi America in the Circuit Court for the County of Fairfax, Virginia. Plaintiffs assert claims under the laws of New York, Ohio, and Wisconsin for alleged fraud and violations of consumer protection laws.

2. Plaintiffs' claims relate to their purchase of certain Audi gasoline-powered vehicles (the "Subject Vehicles") allegedly equipped with a "defeat device," which federal law (40 CFR § 86.1803-01) defines as "an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use," subject to certain exceptions. (Compl. ¶¶ 59-71, 78, 81, 87, 91.) Throughout their Complaint, Plaintiffs allege that VW America, Audi America, and the other defendants employed the purported defeat device to exceed carbon dioxide emissions regulations. (*See, e.g.*, *id.* ¶¶ 48, 52, 71, 87, 88, 91.) Plaintiffs seek actual, treble, punitive, and exemplary damages based on their allegations that they "never would have acquired [their Subject] Vehicle[s]" had they known of the alleged defeat device at the time they acquired the Subject Vehicles. (*Id.* at ¶¶ 118, 134, 151, 166.)

3. Plaintiffs served the Complaint on Audi America on July 18, 2019. A copy of the state court pleadings is attached hereto as **Exhibit 1**.

4. Plaintiffs served the Complaint on VW America through its registered agent on July 24, 2019.

5. To Defendants' knowledge, Plaintiffs have not yet served VW Germany or Audi Germany with process.

**TIMELINESS OF REMOVAL**

6. Audi America first received service of the Complaint on July 18, 2019 and VW America first received service of the Complaint on July 24, 2019. (*See* Ex. 1.) This Notice of Removal is filed within 30 days of that service and is therefore timely pursuant to 28 U.S.C. § 1446(b) ("The notice of removal . . . shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . ."); *see also Murphy*

*Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("Accordingly, we hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service.").

**VENUE**

7.  Plaintiffs originally brought this action in the Circuit Court of Fairfax County, Virginia. Therefore, venue lies in the Eastern District of Virginia, Alexandria Division pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and Local Civ. Rule 3.

**FEDERAL QUESTION JURISDICTION**

8.  Notwithstanding that a complaint may be styled as arising under state law, federal courts look to whether the claim raises "a substantial question of federal law" to determine whether federal jurisdiction exists. *See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983) ("Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court . . . cases in which . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.").

9.  The Supreme Court has long emphasized the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997) ("[e]ven though state law creates [a party's] causes of action, its case might still 'arise under' the laws of the United States" if the "right to relief under state law requires resolution of a substantial question of federal law" (quoting *Franchise Tax Bd. of Cal.*, 463 U.S.

3

at 13)).

10.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S.Ct. 1059, 1065 (2013).

11.     Plaintiffs' Complaint meets that standard. As the Supreme Court recently reaffirmed, federal question jurisdiction is warranted when "a suit raising a state-law claim rises or falls on the plaintiff's ability to prove the violation of a federal duty." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 136 S. Ct. 1562, 1569 (2016). Plaintiffs' Complaint meets that standard because its claims rise and fall on the federal questions of whether the Subject Vehicles contained a "defeat device" as defined by federal regulation, whether the Subject Vehicles complied with federal emissions regulations at the time of sale, whether the Subject Vehicles cheated on federal emissions tests, and whether the Subject Vehicles "Monroney" fuel economy labels were accurate. Each of Plaintiffs' claims premised on these allegations necessarily raises these federal questions, which are actually in dispute.

12.     Plaintiffs' claims in this action are based on repeated allegations that Defendants' conduct – the so-called "Deceptive Emissions Scheme" – purportedly violated federal emissions laws and regulations:

- "The centerpiece of the Deceptive Emissions Scheme was the use of, in the [Subject Vehicles], a secretly embedded software algorithm ***that was designed and installed to cheat emission tests*** . . . thereby tricking and defrauding consumers into buying and/or leasing more than a hundred thousand [Subject Vehicles]" (Compl. ¶ 47 (emphasis added));

- Defendants "figured out a computer-driven methodology and technique ***to cheat the emissions system***--simply run the vehicle in an eco-friendly compliant mode when being tested and in normal dirty mode when it was out on the roadway being driven by consumers" (*Id.* ¶ 48 (emphasis added));

4

- "When being driven on the road, [the Subject Vehicles] also emit more NOx and carbon monoxide than *the levels reported by emission testing*" (*Id.* ¶ 49 (emphasis added));

- "*CO2 emissions standards have been increasing, putting increasing pressure on automobile manufacturers*" (*Id.* ¶ 60 (emphasis added));

- "*During emissions testing, which typically takes place on a dynamometer*, the car remains in 'warm-up' mode indefinitely" (*Id.* ¶ 63 (emphasis added));

- "*The defeat device* software is embedded in the Transmission Control Module" (*Id.* ¶ 65 (emphasis added));

- The alleged defeat device "allow[ed] the vehicles *to produce compliant emission results*" (*Id.* ¶ 66 (emphasis added));

- The alleged defeat device "essentially *tricked the Monroney testing* into giving the false impression that the [Subject Vehicles] had better mileage and lower emissions levels than they did."  (*Id.* ¶ 69 (emphasis added));

- "By improving fuel economy *and complying with the promised CO2 emissions levels*, the Audi Gasoline Defendants found that the resulting driving experience was unacceptable in light of its advertising emphasis on performance" (*Id.* ¶ 71 (emphasis added));

- The Subject Vehicles were "*tested using federal certification tests*" (*Id.* ¶ 80 (emphasis added));

- The alleged vehicles "have been 'reflashed' with a software update as part of an emissions recall *that received regulatory approval*" (*Id.* ¶ 82 (emphasis added));

- "Long after Defendants became aware that many of their vehicles *were deliberately designed to cheat emissions tests*" (*Id.* ¶ 84 (emphasis added));

- Defendants "falsely represented *the emissions and performance of the [Subject Vehicles] on the window stickers of the [Subject Vehicles]*" (*Id.* ¶ 86 (emphasis added));

- Defendants "programmed the engine control computers in the [Subject Vehicles] with software *that effectively detects when the vehicle is undergoing emissions testing* . . . . When the car *is not being emissions tested* . . . the engine control systems operate the engine and transmission in a manner that does not comply with Defendants' representations." (*Id.* ¶ 87 (emphasis added));

5

- Defendants "***sold cars with Defeat Devices*** designed to allow higher levels of pollutant emissions ***than those allowed by state and federal law, thus defrauding their customers***" (*Id.* ¶ 91 (emphasis added));

- "[A]ny software 'repair' that reprograms the [Subject Vehicles] as represented ***(and not just during testing)*** will cause the performance of the [Subject Vehicles] to suffer (*Id.* ¶ 95 (emphasis added));

- Plaintiffs allegedly suffered damages based on their payment for vehicles "***that complied with emissions requirements***" (*Id.* ¶ 96 (emphasis added));

- Defendants "fail[ed] to disclose that the [Subject Vehicles] ***utilize a Cheat Device***" (*Id.* ¶ 98);

- Defendants "concealed and expressly denied ***the existence of problem [sic] with CO2 emissions***" (*Id.* ¶ 108 (emphasis added))

- The alleged cheat devices "caused the vehicle ***to operate in a low-emission test mode only during testing***" (*Id.* ¶¶ 117, 133, 150 (emphasis added));

- Defendants "***used the Cheat Devices to conceal the excess CO2 emissions***" (*Id.* ¶¶ 119, 135, 152 (emphasis added)); and

- Defendants engaged "in fraud by falsely representing ***the emissions and performance of the [Subject Vehicle] on the window stickers of the [Subject Vehicles]***" (*Id.* ¶¶ 120, 127, 136, 144, 153, 162 (emphasis added).)

13. Although Plaintiffs make passing references to state and local regulations, Plaintiffs fail to identify a single applicable state or local regulation that Defendants allegedly violated. Instead, as shown by their allegations, while Plaintiffs attempt to rely on vague alleged misrepresentations made by Defendants, those misrepresentations in fact turn solely on alleged violations of federal emissions laws and regulations. For instance, Plaintiffs allege that the Subject Vehicles contain "defeat devices," (*see* Compl. ¶ 65), a term defined solely by federal regulation, *see* 40 CFR § 86.1803-01, and emit "excess CO2 emissions" (which are also governed by federal law, *see* 40 C.F.R. § 86.1801-01, *et seq.*). Likewise, Plaintiffs explicitly allege that Defendants defeated emissions certification and fuel economy testing, *see* 40 C.F.R. § 600.001, *et seq.*, and

6

used the incorrect information obtained from that testing on the Monroney labels of the Subject Vehicles, the contents of which are governed by 49 C.F.R. § 575.401.  (*See* Compl. ¶ 69.)

14. Whether Plaintiffs' vehicles violated federal "[e]mission standards for new motor vehicles or new motor vehicle engines," 42 U.S.C. § 7521, raises a question of federal law.  As the federal court in a separate litigation involving diesel vehicles recognized, "[e]nforcement of the Clean Air Act before the first sale of new motor vehicles is the sole and exclusive prerogative of the federal government."  *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*, 264 F. Supp. 3d 1040, 1050 (N.D. Cal. Aug. 31, 2017) (quoting *Sims v. State of Fla., Dept. of Highway Safety and Motor Vehicles*, 862 F.2d 1449, 1455 (11th Cir. 1989)).  Although states may exercise their authority to regulate the operation and maintenance of vehicles within their borders (so-called "in use" authority), states may not "establish[ ] shortly-off-the-lot emission control requirements," because "the Clean Air Act's purpose of 'preventing obstruction to interstate commerce' would be defeated if 'a state or locality were free to impose its own emission control standards the moment after a new car is bought and registered.'"  264 F. Supp. 3d at 1051 (quoting *Allway Taxi, Inc. v. City of New York,* 340 F. Supp. 1120, 1124 (S.D.N.Y.), *aff'd,* 468 F.2d 624 (2d Cir. 1972)).  Because only the EPA has the authority to regulate vehicles when manufactured and when "shortly-off-the-lot," the question of whether the Subject Vehicles contained defeat devices, complied with federal emissions standards, and passed the requisite federal emissions standards at the time of sale or lease are questions of federal law.

15. While Plaintiffs attempt to avoid federal question jurisdiction by making vague references to the Subject Vehicles not complying with "Defendants' representations," (*see* Compl. ¶ 87), they fail to specifically identify alleged representations *other than* those dealing with federal emissions standards.  Plaintiffs concede as much: "Defendants manufactured, marketed, and sold

cars with Defeat Devices designed to allow higher levels of pollutant emissions than those by state and federal law, thus defrauding their customers, including Plaintiffs." (*Id.* ¶ 91.) As discussed above, Plaintiffs fail to identify any state law emissions law actually violated by Defendants. By Plaintiffs' own pleading, this Court must determine whether Defendants violated federal emissions standards in order to determine whether Defendants defrauded Plaintiffs.

16. Accordingly, Plaintiffs' claims necessarily rely on alleged violations of federal law.

17. The federal questions Plaintiffs raise are also actually disputed. No Defendant has admitted to installing a "defeat device" in the Subject Vehicles – which are *gasoline* vehicles, not *diesel* vehicles. No Defendant has admitted to any other violations of federal law related to the Subject Vehicles, nor has any regulatory body made any determination that the Subject Vehicles have prohibited defeat devices or otherwise do not comply with federal emissions standards.[1] As a result, Plaintiffs' claims necessarily raise actually disputed federal questions, including: 1) whether the Subject Vehicles contained a "defeat device" as defined by federal regulation, 2) whether the Subject Vehicles comply with federal emissions standards, and 3) whether the Monroney fuel economy labels provided on window stickers were accurate. Plaintiffs cannot succeed on either cause of action without a resolution of these solely federal issues.

18. Finally, these substantial and disputed federal questions touch on a distinctly federal interest. A question is of "interest to the federal system as a whole" where "[d]etermination of the federal issues in this case could heal or injure [a] complex regulatory scheme" that has "the potential to affect many people" subject to its regulations. *Cty. of Santa Clara v. Astra USA, Inc.*,

---

[1] The vehicles at issue in this action are not the same vehicles that are the subject of the well-publicized *diesel* emissions issues, for which Defendants have acknowledged that a defeat device existed. Instead, the Subject Vehicles in this action are the different *gasoline-powered* vehicles.

401 F. Supp. 2d 1022, 1028 (N.D. Cal. 2005); *see also id*. at 1027–28 (focusing on "the importance of the federal issue" (collecting cases)). Such a "complex federal regulatory scheme"—namely, the EPA's comprehensive regulation of motor-vehicle emissions—is at stake here. *Volkswagen Wyoming*, 2017 WL 3816738, at *8 (noting that Congress broadly preempted state regulation of new motor vehicle emissions to prevent "the 'anarchic patchwork of federal and state regulatory programs' that could otherwise result if each State were free to adopt or enforce new motor vehicle emissions standards") (quoting *Motor Vehicle Mfrs. Ass'n v. N.Y. State Dep't of Envtl. Conservation*, 17 F.3d 521, 526 (2d Cir. 1994)) and *Engine Mfrs. Ass'n* v. *EPA*, 88 F.3d 1075, 1079 (D.C. Cir. 1996)). It is not difficult to envision the chaos that could result from different state courts reaching different conclusions about whether the affected vehicles are legal to operate or resell. And unlike their state-court counterparts, "federal courts are particularly familiar with the federal regulatory scheme" governing environmental compliance. *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E.* v. *Tenn. Gas Pipeline Co.*, 29 F. Supp. 3d 808, 863 (E.D. La. 2014). Thus, there is a strong federal interest—and no countervailing state interest—in having this litigation heard in federal court.

19. Federal courts should resolve the federal questions inherent in Plaintiffs' claims. Allowing a federal court to address these federal questions would be consistent with the federal/state balance contemplated by the CAA because the questions "raise significant federal issues." *Grable*, 545 U.S. at 312. The "cornerstone" of the CAA is the exclusive power of the federal government to regulate new vehicle engine emissions to prevent "the spectre of an anarchic patchwork of federal and state regulatory programs" governing vehicle emissions. *Engine Mfrs. Ass'n*, 88 F.3d at 1079 (quoting *Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979)). The "clear and undisputed intent of Congress" was to create a uniform federal scheme thereby "avoiding a chaotic situation from developing where vehicle manufacturers would be

subject to 50 different sets of requirements relating to emissions controls." *In re Applications to Quash Subpoenas Duces Tecum Issued by the Office of the Attorney Gen. of the State of N.Y.*, 709 N.Y.S.2d 1, 9 (N.Y. App. Div. 1st Dep't 2000) (alterations, citations, and internal quotation marks omitted). Thus, permitting a federal court to determine whether Defendants violated the CAA will not upset the balance between state and federal courts for the simple reason that a federal court is best positioned to interpret federal law. In fact, a putative class action complaint concerning plaintiffs' CO2 allegations has already been filed by the Plaintiffs' Steering Committee in the federal multi-district litigation styled as *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*, 3:15-md-02672-CRB, Dkt. 4043 (N.D. Cal.), alleging class-wide claims concerning the Subject Vehicles.

20. Here, Plaintiffs' rights to recovery turn on substantial, disputed questions of federal law regarding federal emissions standards. Only by resolving these questions at the federal level can the congressionally established federal-state balance be properly maintained.

WHEREFORE, the case now pending in the Circuit Court for Fairfax County, Virginia, Docket No. CL19-09075, is hereby removed to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446.

Dated: August 9, 2019               Respectfully submitted,

                                    VOLKSWAGEN GROUP OF AMERICA, INC.
                                    and AUDI OF AMERICA, LLC

                                    /s/ Kenneth W. Abrams
                                    Terrence M. Bagley, Esquire (VSB No. 22081)
                                    Christopher E. Trible, Esquire (VSB No. 48847)
                                    Kenneth W. Abrams, Esquire (VSB No. 78216)
                                    McGuireWoods LLP
                                    Gateway Plaza
                                    800 East Canal Street
                                    Richmond, Virginia 23219
                                    Telephone: (804) 775-1000

Facsimile: (804) 698-2008
tbagley@mcguirewoods.com
ctrible@mcguirewoods.com
kabrams@mcguirewoods.com

John D. Wilburn, Esquire (VSB No. 41141)
Heather Britton Chaney, Esquire (VSB No. 78313)
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102
Telephone: (703) 712-5000
Facsimile: (703) 712-5228
jwilburn@mcguirewoods.com
hchaney@mcguirewoods.com

Michael H. Steinberg (*pro hac vice* forthcoming)
Sullivan & Cromwell LLP
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel.: (310) 712-6600
Fax: (310) 712-8800
steinbergm@sullcrom.com

Julia M. Jordan (*pro hac vice* forthcoming)
Sullivan & Cromwell LLP
1700 New York Avenue, NW, Suite 700
Washington, DC 20006
Tel.: (202) 956-7500
Fax: (202) 293-6330
jordanjm@sullcrom.com

William B. Monahan (*pro hac vice* forthcoming)
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Tel.: (212) 558-4000
Fax: (212) 558-3588
monahanw@sullcrom.com

*Counsel for Defendants Volkswagen Group of America, Inc. and Audi of America, LLC*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on August 9, 2019, a true and correct copy of the foregoing instrument was sent via Federal Express and e-mail to:

>Charles Wade Miller, Esquire
>Eric Pearson, Esquire
>John Chapman, Esquire
>HEYGOOD, ORR & PEARSON
>6363 North State Highway 161, Suite 450
>Irving, Texas 75038
>Telephone: (214) 237-9001
>Facsimile: (214) 237-9002
>charles@hop-law.com
>eric@hop-law.com
>jchapman@hop-law.com

                                    /s/ Kenneth W. Abrams
                                    Kenneth W. Abrams